UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROTHSCHILD DIGITAL CONFIRMATION LLC<br><br>Plaintiff,<br><br>v.<br><br>FINGENT CORPORATION,<br><br>Defendant. | Civil Action No. 1:18-cv-10656-GAO<br><br>**LEAVE TO FILE GRANTED 8/1/18** |

**FINGENT'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

This Reply focuses on RDC's arguments as to the two-part test for patent

eligibility *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

**A.     That the functions described in the '872 patent are directed to abstract ideas
under step one of the *Alice* test has already been decided as a matter of law.**

To determine patent-eligibility under § 101, the court must first determine

whether the claims are "directed to" an abstract idea. *Alice*, 134 S. Ct. at 2355.

Here, each asserted claim is directed to an abstract idea. Claim 1 comprises:

> a module to "verify an identity of a user of the device" before allowing the
> user to operate the device (e.g., password protection);
>
> a module to "captur[e] an image" once the user's identity has been verified
> (i.e., a camera);
>
> modules to determine the time, date, and location of the photo at the time it
> is taken;

1

> a module to tag the image with this date, time, location, and user information and to make an assignment based on this tagged image; and
>
> a module to encrypt the tagged digital image file.

'872 patent at 16:56-17:7. "[F]undamental . . . practice[s] long prevalent in our system" are abstract ideas. *Intellectual Ventures I, LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (citing *Alice*, 134 S.Ct. as 2356). More to the point, the Federal Circuit has already ruled that

- claims directed to collecting information—even when limited to a particular context—are directed to an abstract idea, *SAP America, Inc. v. InvestPic, LLC*, 890 F.3d 1016, 1021 (Fed. Cir. 2018) (citations omitted);

- "attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1," *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016); and

- using password protection and encryption to verify activities and users and to encrypt files are "long-prevalent practice in the field of computers." *Intellectual Ventures*, 838 F.3d at 1319 (holding virus screening is an abstract idea for this reason); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (holding method for verifying the validity of a credit card transaction is an abstract idea).

**B.    The '872 patent fails at step two of the *Alice* test too because it (i) recites no specific improvement in computer capabilities and (ii) is so result-based as to preempt all possible applications of the abstract idea it embodies.**

Step two of the *Alice* test asks if the elements of the claim, considered both individually and "as an ordered combination," contain a sufficiently "inventive concept" to transform the abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. To meet this test, claims cannot merely *use* computers, they must "improve the functioning of the computer itself." *Id*. at 2359.

The concern driving this principle is one of preemption. *Alice*, 134 S. Ct. at 2354. Abstract ideas are "the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S.Ct. 1289, 1293 (2012). Granting patents for these tools risks monopolizing them, creates "enormous potential for rent seeking" and "enormous transaction costs" for using them, and thereby "ties up their future use" and inhibits future inventions more than promotes them. *Id.* 1294, 1301 (2012); W. Landes & R. Posner, The Economic Structure of Intellectual Property Law 305-306 (2003).

The Federal Circuit has invalidated dozens of software-based patents granted before the *Alice* decision that, under the new *Alice* test,

> failed to pass section 101 muster, because they did not recite any assertedly inventive technology for improving computers as tools and/or because the elements of the asserted invention were so result-based that they amounted to patenting the patent-ineligible concept itself.

*Interval Licensing LLC v. AOL, Inc.*, No. 16-2502, slip op. at 14 (Fed. Cir. July 20, 2018); *see, e.g., Electric Power Group v. Alstom S.A.*, 830 F.3d 1350, 1354, 1355-56 (Fed. Cir. 2016). Like these other patents, the '872 patent was granted before *Alice* and fails to pass section 101 muster on both counts.[1]

---

[1] That the law has changed since the Examiner granted the '872 patent in 2008 is just one of many reasons RDC's argument that the Examiner raised no abstractness concerns is entirely irrelevant to the present Motion. RDC's Opposition at pp. 8-9. The Examiner also found no concerns with the '872 patent or others in its family based on anticipating prior art or obviousness, but several claims in these patents have nevertheless since then been invalidated or voluntarily cancelled after challenges based on precisely these grounds. *Id.*

1.  *None of RDC's well-pleaded factual allegations recite any assertedly inventive technology for improving computers as tools.*

RDC argues the '872 patent "focuses on specific improvements to computer capabilities" and "computer-related technology," and addresses a "specific issue within technology." RDC Opposition at pp. 6, 7, 19. But RDC alleges no facts— and its patent recites none—from which one could plausibly infer that the patent does anything of the kind. Only RDC's well-pleaded factual allegations are presumed to be true for purposes of a motion to dismiss; its conclusory assertions and legal conclusions cast as factual allegations are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Each claim described in the '872 patent relies on "entirely conventional, generic technology" performing "generic computer functions." *Electric Power*, 830 F.3d at 1354, 1355; *Alice*, 134 S.Ct. at 2359). For instance, the "capture module" describes standard digital camera technology, '872 patent at 4:13-29. The "display module" and "user input module" describe "standard and currently available" screens, keyboards, and voice recognition software. *Id.* at 4:42-54, 4:55-5:4, 8:6-9.

RDC relies on *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); and *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)—two cases since *Alice* in which software-based claims were found patent-eligible—but unlike the '872 patent at issue here, the patents in these cases "were directed to improvements in the way computers and networks carry out their basic functions." *SAP America*, 890 F.3d at 1022. *Enfish* "involved a 'specific type of data structure [a self-referential table] designed to improve the way a

computer stores and retrieves data in memory.'" 822 F.3d at 1339. Likewise, the claims in *McRO* recited not just a result—automating the previously non-automated task of film animation—but also "rules of a particular type" to achieve that automation. 837 F.3d at 1314.

These patents allowed computers to do what they previously could not do (retrieve data more efficiently, automate the animation of human faces). Similarly, the patent at issue in *Thales Visionex Inc. v. United States* was patentable because it allowed inertial sensors to do what they previously could not do—track objects more accurately (by measuring them relative to a moving platform rather than relative to the earth). 850 F.3d 1343, 1345, 1348-49 (Fed. Cir. 2017).

By contrast, the '872 patent uses computers to do what they have been technologically capable of doing all along—take pictures, sort them, encrypt them, verify users of devices through password-protection, etc. Claims are not patent-eligible where they "require no improved computer resources [the patentee] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process." *SAP America*, 890 F.3d at 1023 (finding claims patent-ineligible for this reason); *accord Alice*, 134 S. Ct. at 2357 (same). "Wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2350-51 (citing *Mayo*, 132 S. Ct. at 1297).

2.     *RDC's asserted claims are so result-based that they amount to patenting the patent-ineligible concept itself.*

In addition to lacking any specific improvements in computer capabilities or computer-related technology, every claim in the '872 patent is described purely in terms of "desired results (functions)" and not in terms of "particular ways of achieving (performing) them." *Id*. For example, claim 1 recites:

- "a user verification module for verifying an identity of a user of the device, . . . enabl[ing] operation of the device and provid[ing] an assignment to the user . . . [and] verif[ying] the identify of the user of the device at the time of the image capture," '872 patent at 6:58-61, 6:64-65;

- "a capture module for capturing an image relating to an assignment and creating an image file," *id*. at 6:62-63; and

- "a locational information module for determining a location of the device when capturing the image," *id*. at 6:66-67.

RDC argues that Fingent's description of the '872 patent is "untethered from the language of the claims," but it is the language of the claims itself that persistently remains at a "high level of abstraction." RDC's Opposition at p. 16.

"[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101[.]" *Electric Power*, 830 F.3d at 1356. Allowing patents for claims that only describe desired functions—without claiming "some specific way" or "particular implementation" of those function—would allow patentees "to monopolize every potential solution" to a problem and "inhibit innovation." *Id*. (citations omitted).

The description of the claims does not add any greater specificity than the claims themselves. Module by module, the '872 patent explains the claims can be

implemented using *any* form of user verification, *any* form of encryption, *any* form or storage and transmission, *any* form of data entry, etc. For instance:

- the "user identification module" describes any "password protection algorithm" or biometric identity device that is "common and . . . widely in use," '872 patent at 5:26-44;

- the "locational information module" describes standard GPS or "any other available locational technology," *id.* at 5:51-63;

- "[t]he date and time module will use standard computer chip processing technology widely in use," *id.* at 6:5-7;

- the "storage module" describes existing internal storage memory, existing removable memory, "or any other memory storage that exists currently or will exist in the future," *id.* at 4:29-34; and

- "[t]he digital file format used to store the image . . . may include standard file formats that currently exist or will exist in the future," *id.* at 4:35-41.

*Contrast with Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-60, 1261 (Fed. Cir. 2017) (finding claims patentable because they created a specific improved computer memory system based on specific computer code, rather than reciting "all types and all forms of categorical data storage"); *and Enfish*, 822 F.3d at 1337 (finding claims not abstract because they "are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table for a computer database") (emphasis in original). The '872 patent encompasses not only all existing technologies that could implement each function it describes, but also any technologies that may be discovered in the future. *See Mayo*, 132 S. Ct. at 1302 (holding claims patent-ineligible where they covered all existing *and future* technologies that could be used to implement them).

The drafter's intention *not* to specify any particular implementation of the functions described in the patent is quite explicit:

> "The various processes and functions described herein may either be part of the micro instruction code or part of the application program (or a combination thereof) which is executed via the operating system. In addition, various other peripheral devices may be connected to the computer platform[.]"

'872 patent at 10:27-32. And, "the present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof." *Id*. at 10:18-21.

In short, not only by what it omits (any specific improvement to computer capabilities), but also by what it expressly includes, the '872 patent is drafted so as to cover any and all possible implementations of the functions it recites. "[W]hen a claim directed to an abstract idea 'contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described,' . . . then the claim is not patent-eligible." *Intellectual Ventures,* 838 F.3d at 1316.

## C.     None of RDC's other arguments alter the conclusion that the '872 patent is an improper attempt to monopolize an abstract idea.

Neither the alleged novelty of the claims as a whole, nor the recitation of a generic encryption module or generic "locational image verification device" take the asserted claims out of the realm of the abstract or transform them into a patent-eligible "inventive concept" because none of these aspects of the patent provide the necessary "specific improvement to computer capabilities." *See Enfish*, 822 F.3d at 1335-36 ("[T]he first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer

8

capabilities[.]"); *Intellectual Ventures*, 838 F.3d at 1315-16 (explaining the second step of the *Alice* test requires that the asserted claims "improve the functioning of the computer itself") (citing *Alice*, 134 S.Ct. at 2359).

1.    *The alleged novelty in the asserted claims does not make them patent-eligible because, novel or not, the claims recite no assertedly inventive computer technology.*

First, RDC argues that claim 1 "represent[s] an inventive concept that was not well-understood, routine, or conventional at the time of filing the '872 patent," and that "the image capturing devices at the time of the invention . . . were not able to perform th[e] combination of functions" outlined in the '872 patent. RDC Opposition at pp. 16-19, 20-21 (emphasis added). Omitting the conclusory label of *inventive concept*, these allegations, even if factually true, do not satisfy the legal standard for patent-eligibility under § 101.

"The 'novelty' of any element or steps in a process, or even in the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possible patentable subject matter." *Intellectual Ventures*, 838 F.3d at 1315 (citations omitted) (emphasis in original). "[A] claim for a *new* abstract idea is still an abstract idea." *Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original). "For purposes of [the § 101 analysis], we assume that [the patentee's] formula is novel and useful and that he discovered it." *Parker v. Flook*, 437 U.S. 584, 588 (1978).[2]

_____

[2] For these reasons, the exhibits regarding prior art that RDC attached to its Opposition are irrelevant to the pending Motion to Dismiss. *See Mayo*, 132 S.Ct. at 1303-04 (rejecting "the Government's invitation to substitute §§ 102, 103, and 112 inquiries for the better established inquiry under § 101"); *SAP America*, 890

An idea may be "[g]roundbreaking, innovative, or even brilliant," but—again—it is patent-eligible only if it "improve[s] the functioning of the computer itself" or "effect[s] an improvement in any other technology or technical field." *Alice*, 134 S. Ct. at 2359; *SAP America*, 890 F.3d at 1018. For example, the patents in *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) possessed the necessary "inventive concept" at step two because they overcame specific technical challenges unique to the Internet. *Intellectual Ventures*, 838 F.3d at 1321. The patent in *Bascom*—which called for installing a filtering tool at a specific location remote from end-users, with customizable filtering features specific to each end user—claimed "an arguably inventive distribution of functionality within a network" that "overcomes existing problems with other Internet filtering systems." 827 F.3d at 1351. Similarly, the claims in *DDR Holdings* modified the conventional mechanics behind website display. 773 F.3d at 1257. The claims "required doing something *to* a web page, not simply doing something *on* a web page[.]" *Affinity Labs of Texas v. DirectTV, LLC*, 838 F.3d, 1253, 1262 (Fed. Cir. 2016).

---

F.3d at 1018 ("[I]t [is not] enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103.").

In addition to being irrelevant, these exhibits violate the Rules of Civil Procedure that prohibit plaintiffs from supplementing their pleadings in an opposition to a motion to dismiss. In ruling on the Motion to Dismiss, the Court may consider only the well-pleaded factual allegations in RDC's Complaint, the patent RDC attached to its Complaint, and any matters of public record. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

Key to the reasoning in both *Bascom* and *DDR Holdings*—and the Federal Circuit opinions that have relied on them—was the finding that the claims at issue taught a specific technical implementation of the proposed idea (e.g., "a specific way to automate the creation of a composite web page") and therefore "did not preempt 'every application of the idea[.]'" *Affinity Labs*, 838 F.3d at 1262 (describing *DDR Holdings*); *see also Bascom*, 827 F.3d at 1350 (reasoning claims did not "preempt all the ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of filtering content").

Conversely, where asserted claims preempt all possible applications of the proposed idea on a given platform, they are not patentable. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (claims preempted all application of the claimed idea on generic scanning and data processing technology); *Ultramercial*, 772 F.3d at 715-16 (claims preempted all application of the claimed abstract idea on the Internet).

Unlike the patents at issue in *Enfish*, *McRO*, *Thales*, *DDR Holdings*, and *Bascom*—and like the patentable-ineligible claims in *Content Extraction* and *Ultramercial*—the claims in the '872 patent teach no technological innovation to implement its "novel" idea, do not purport to "improve an existing technological process," and are so all-encompassing in describing the technology that may be used to implement them as to preempt all possible applications of the idea it embodies.[3] *Enfish*, 822 F.3d at 1335 (citations omitted). See *supra* pp. 5-10.

---

[3] Indeed, the '872 patent seems to preempt, among others, the Apple iPhone, Samsung Galaxy, and Google Pixel, all of which, after the '872 patent was granted, introduced

Therefore, assuming *arguendo* that the ordered combination of the modules in claim 1 is novel and inventive, "the focus of the claimed advance over the prior art" is a conceptual advance, not a technological one. *Enfish*, 822 F.3d at 1335. The alleged innovation in the '872 patent is in the abstract idea to "capture and store images in a secure format containing information on the [time, date, location, and user]." RDC's Opposition at pp. 6, 7.

Patent law does not protect abstract advances in business practices "no matter how groundbreaking." *SAP America*, 890 F.3d at 1023-24; *Enfish*, 822 F.3d at 1335. More to the point, it does not protect an advance in the functions of collecting, analyzing, and presenting information devoid of "any particular assertedly inventive technology for performing those functions." *Electric Power*, 830 F.3d at1354, 1355-56 (citations omitted). "If any such protection is to be found, the innovator must look outside patent law in search of it, such as in the law of trade secrets, whose core requirement is that the idea be kept secret from the public." *SAP America*, 890 F.3d at 1023-24.

2.   ***The encryption module does not make the claims patent-eligible because this module describes no assertedly inventive computer capability.***

Second, RDC argues that the encryption module, "by itself, ensure[s] [the patent's] eligibility under Sec. 101." RDC's Opposition at p. 15. But "[s]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 132 S. Ct. at 1300. Where

---

smartphones with password-protection, automatic tagging of images with place and time information, and—at least in the case of the iPhone—automatic encryption of digital images (and their associated time and location information).

each step does no more than describe a conventional method, the fact that some of those steps "were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue." *Ultramercial*, 722 F.3d at 716. Thus, the Federal Circuit rejected the argument that the addition of a graphical user interface to the claims—even if novel as of the priority date—made these claims patentable where that limitation "merely recites a generic computer component," with "no further specification of particular technology" for implementing the limitation. *Affinity Labs*, 838 F.3d at 1257, 1262-64.

Like every other module in the '872 patent, the encryption module is described at a high level of generality, in terms of existing computer capabilities, without specifying particular technology: "The encryption module will use conventional code encryption algorithms currently in use or that will be in use in the future." '872 patent at 6:32-34; 14:56-58. A patent cannot "simply recite an [abstract idea] and then add the instruction 'apply the [idea].'" *Mayo*, 132 S. Ct. at 1297. The process it describes must "provide practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id*.[4]

---

[4] RDC argues Fingent is required to include a claim-by-claim analysis in its Motion to Dismiss, and not just discuss claim 1. RDC's Opposition at pp. 21-22. But for every claim in the '872 patent that has not already been voluntarily cancelled, the same reasoning applies: each dependent claim simply appends another conventional step, well known in the art, specified at a high level of generality. See *Content Extraction*, 776 F. 3d at 1349 (holding dependent claims that added "well-known, routine, and conventional functions" did not transform the idea into a patentable invention); *Affinity Labs*, 838 F.3d at 1264 (holding dependent claims that "simply constitute particular choices from within the range of existing content or hardware" did not transform the idea into a patentable invention).

3.     *The "locational image verification device" does not make the claims patent-eligible because this "device" recites no assertedly inventive computer technology.*

Finally, RDC argues the "locational image verification device" in claim 1 overcomes the "technical challenge" of allowing a user to capture images, tag them with information, and store them in a secure format; "provides an inventive solution to the need at the time of the invention for verifying information captured via digital images"; and "improve[s] the manner in which a device can capture and store images in a secure format." RDC Opposition at pp. 7, 16, 18.

No well-pleaded factual allegations in the Complaint or the '872 patent support these conclusory arguments. Although the '872 patent proposes modifications to existing camera and cellphone technology that may have been novel as of its priority date, it only suggests *that* a device (a generic digital camera or smartphone) be modified to implement its abstract combination of functions, but gives no particulars about *how*. See '872 patent, 16:56-17:7. To the degree the patent explains *how* to build its "device," it recites no "assertedly inventive technology" for doing so, only "generic computer components configured to implement" the functions in claim 1. *Alice*, 134 S. Ct. at 2360. It relies on existing hardwire connections, '872 patent at 6:48-51; existing wireless communication technology, *id.* at 6:51-58, 7: 65-8:1, 8:15-17; existing scanning technology, *id.* at 7:23-49; existing image sensors, *id.* at 8:32-35; etc.

These recitations are insufficient to make the invention patent-eligible. The Supreme Court and Federal Circuit "have repeatedly made clear that merely

14

limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs*, 838 F.3d at 1259 (citations omitted); *see, e.g., Alice*, 134 S. Ct. at 2360 (holding claims reciting a "data processing system," "communications controller," and "data storage unit" are nevertheless directed to an abstract idea); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (holding same for claims directed to an "interface," "network," and a "database"); *Content Extraction*, 776 F.3d at 1347 (holding same for claims reciting a "scanner").

To be patent-eligible, claims about physical devices, like claims about processes and methods, must recite some "specific improvement in computer capabilities." A physical "device" that merely "takes the abstract idea and says 'apply it' to a wireless, cellular telephone device acting as a general computer," "devoid of any teaching or blueprint explaining how the device can do what it purports to do," is not patent-eligible. *Affinity Labs*, 838 F.3d at 1256-58; *accord TLI Communications*, 823 F.3d at 615 (citations omitted).

Like the cell phone in *Affinity Labs*, the "device" described in claim 1 "is entirely functional in nature,"[5] "can be implemented in myriad ways,"[6] and claims "no particular way of performing that function." *Affinity Labs*, 838 F.3d at 1258. It "merely provide[s] a generic environment in which to carry out the abstract idea" embodied in the patent. *TLI Communications*, 823 F.3d at 611.

---

[5] Claim 1, which describes the purported "locational image verification device," is nothing more than a list of abstract functions. See the '872 patent, 16:56-17:7.
[6] "[T]he present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof." '872 patent at 10:18-21. See also *supra* pp. 7-9.

The physical "device" in the '872 patent is "not a physical-realm improvement [such as an improved computer or network] but an improvement in wholly abstract ideas[.]" *SAP America*, 890 F. 3d at 1022. It is "no different from the method claims in substance." *Alice*, 134 S. Ct. at 2360. If an applicant could claim any abstract idea "by reciting a computer system configured to implement [it,] . . . the determination of patent eligibility [would] 'depend simply on the draftsman's art.'" *Alice*, 134 S. Ct. at 2359 (citation omitted).

**D.    Conclusion**

RDC fails to make well-pleaded factual allegations that its asserted claims recite an "arguable technical advance over conventional . . . technology." *Interval Licensing*, No. 16-2502, slip op. at *3. In such circumstances, the court may properly resolve the eligibility of the '872 patent under 35 U.S.C. § 101 on a motion to dismiss, before claim construction. *SAP America*, 890 F. 3d at 1023.

Wherefore, the Court should find the '872 invalid under 35 U.S.C. § 101 and dismiss with prejudice the claims against Fingent Corporation pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,
FINGENT CORPORATION,
By its attorneys,

Dated:  August 1, 2018

*/s/ Briana R. Cummings*
Briana R. Cummings (BBO# 692750)
BRANCH LEGAL
P.O. Box 343
Winchester, MA 01890
(781) 325-8060

(781) 240-6486 (fax)
briana@branchlegal.com

Lisa M. Tittemore (BBO #567941)
Joel R. Leeman (BBO #292070)
SUNSTEIN KANN MURPHY & TIMBERS LLP
125 Summer St.
Boston, MA 02110-1618
(617) 443-9292
littemore@sunsteinlaw.com
jleeman@sunsteinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2018, I served a copy of the within Reply electronically on all counsel of record via the Court's ECF filing system.


/s/ Briana R. Cummings
Briana R. Cummings